2 U.S. 321 (____)
2 Dall. 321
The UNITED STATES
versus
GUINET, et al.
Supreme Court of United States.

*324 Levy, for the defendant.
*328 PATTERSON, Justice:
This is an indictment against John Etienne Guinet, for being, knowingly, concerned in furnishing, fitting out, and arming Les Jumeaux, in the port and river Delaware, with intent that she should be employed in the service of the French Republic, to cruise, or commit hostilities, upon the subjects of Great Britain, with whom the United States are at peace: And it is the province of the Jury to enquire, whether the proof exhibited on the trial, has fully maintained the charge contained in the indictment.
Much has been said upon the construction of the 3d. and 4th sections of the act of Congress; but the Court is clearly of opinion, that the 3d section was meant to include all cases of vessels, armed within our ports by one of the belligerent powers, to act as cruisers against another belligerent power in peace with the United States. Converting a ship from her original destination, with intent to commit hostilities; or in other words, converting a merchant ship into a vessel of war, must be deemed an original outfit; for the act would, otherwise, become nugatory and inoperative. It is the conversion from the peaceable use, to the warlike purpose, that constitutes the offence.
The vessel in question arrived in this port, with a cargo of coffee and sugar, from the West-Indies; and so appears to have been employed by her owner with a view to merchandize, and not with a view to war. The enquiry, therefore, is limited to this consideration, whether, after her arrival, she was fitted out, in order to cruise against any foreign nation, being at peace with the United States. It is true, she left the wharf with only four guns, the number that she had brought into the port; but it is equally true, that when she had dropped to some distance below, she took on board three or four guns more, a number of muskets, water-casks, &c.; and, it is manifest, that other guns, were ready to be sent to her by the Pilot-boat. These circumstances clearly prove a conversion from the original commercial design of the vessel, to a design of cruising against *329 the enemies of France; and, of course, against a nation at peace with the United States, since the United States are at peace with all the world. Nor can it be reasonably contended, that the articles thus put on board the vessel were articles of merchandize; for, if that had been the case, they would have been mentioned in her manifest, on clearing out of the port, whereas it is expressly stated, that she failed in ballast. If they were not to be used for merchandize, the inference is inevitable, that they were to be used for war. No man would proclaim on the house top, that he intended to fit out a privateer: the intention must be collected from all the circumstances of the transaction, which the Jury will investigate, and on which they must decide. But if they are of opinion, that it was intended to convert this vessel from a merchant ship into a cruiser, every man who was knowingly concerned in doing so, is guilty in the contemplation of the law.
It will only, then, be necessary to ascertain, how far the defendant was knowingly concerned; for, though he were concerned, if he did not act with a knowledge of the real object, he would be innocent. It has been alleged in his defence, that he was merely an interpreter; and if, in fact, he had appeared in that character alone, we should not have thought it a sufficient ground for conviction. But the Jury will collect from the other parts of the transaction, whether this is not used as a mark to cover his efficient agency in the equipment of the vessel. He carried orders from the owner to the ship carpenter; he told the Pilot-boy at what time the guns should be taken on board his boat, to be carried to the ship; the account found in his possession states charges for supplies of cannon, ball, muskets, and commissions for services; and the whole is conducted in a secret and mysterious manner, under the shade of night. Would he have acted this part as a mere interpreter? If it had been fair mercantile business, involving nothing repugnant to our laws, would it have been so much a work of darkness? This alone casts a gloom over the transaction, that will impress every just and ingenuous mind with an idea of fraud and delinquency.
If the defendant has been concerned in the offence, there is no doubt that it is effected as far as it was in his power to complete it. The illegal outfit of the vessel was accomplished; and that an additional number of cannon was not sent to augment her force, was not owing to his respect to the laws, but to the vigilance of the public police.
Upon the whole, the Jury will consider the indictment; and give such a verdict as shall comport with evidence and law.
Verdict  Guilty.